· CASE 102—EQUITY—DECEMBER 14, 1882.

# Paine, &c., v. Woolley, &c.

## ON MOTION TO DISMISS APPEAL.

### APPEAL FROM LOUISVILLE CHANCERY COURT.

1. A party who has recovered a judgment upon a claim which is indivisible, and has, after its rendition, coerced by execution full satisfaction, cannot maintain an appeal in this court, against the objections of the judgment debtor, upon the ground that he has not recovered enough.

2. This rule applies to judgments in equity as well as at law.

.3. Having elected to collect his judgment, appellant ratified it, and should be estopped from prosecuting the appeal as inconsistent with his collection of the amount adjudged to him.

. W. O. & J. L. DODD, E. W. HINES, AND E. E. McKAY FOR APPELLANTS.

1. The judgment appealed from is a decree in chancery, and not a judgment at law.

2. The whole of the appellants' claim is not denied by defendants' answer, and the whole of it must necessarily be allowed *pro confesso.*

3. The entire issues in the lower court were upon the counter-claims and set-offs of appellees. Consequently, on this appeal appellants were defendants in the court below and appellees were plaintiffs.

4. Only parts of judgments appealed from are complained of, and these parts so complained of are not affected, and cannot be affected, by the payment or non-payment of the money.

5. There is no cross-appeal prayed, and in no event can the appellants take less than they have received. The only question is, shall they have more? (9 Ala., 278; 10 *Ib.,* 275; 17 *Ib.,* 459; 23 *Ib.,* 355; 46 *Ib.,* 183; 18 N. Y., 484; 45 *Ib.,* 209; 45 Ala., 124; 3 Gilman, Ills., 414; 7 Paige, 206; 18 La. Ann., 62; Bourne v. Simpson, 9 B. Mon., 455; 54 Ala., 354; 23 Ala., 346; 9 *Ib.,* 278; 10 *Ib.,* 274; 28 *Ib.,* 815; 27 How. Prac., 393; 3 Wall., 687; *Ib.,* 702; 1 Am. L. Rev., 235; 10 *Ib.,* 357; Fowler v. Woodyard, 6 J. J. Mar., 607; 8 Cowan, 330; 17 Ala., 459; 60 *Ib.,* 373.)

RICHARDS & BASKIN FOR APPELLEES.

1. A plaintiff who has obtained judgment and enforced full satisfaction of it by an execution, cannot afterwards prosecute an appeal to reverse the same judgment which he has already accepted, enjoyed, and extinguished.

Paine, &c., v. Woolley, &c.

:2. The principle applies to decrees in chancery as well as to judgments at law, except that where a decree is composed of differents parts which are separate and independent of each other, one part may be executed and another appealed from. But this exception has no application to judgments *quod recuperet debitum.*

.3. A tender back of the money has no regenerating power by which the right to prosecute an appeal, when once lost, can be restored to an appellant. (11 Mo., 209; 1 Penn. Rep., 115; 2 Watts & Serg., 103; 18 Penn. St. Rep., 150; 37 *Ib.*, 366; 36 Texas, 119; 44 Iowa, 201; 14 *Ib.*, 575; 52 Barb., 152; 3 La. Ann., 115, 358, 593; 44 Ills., 185; 8 Cowen, 331; 45 N. Y., 209; Commonwealth v. South, MS. Op., Dec., 1882; Kellar v. Williams, 10 Bush, 221; 4 Wall., 182; Civil Code, section 96; 93 U. S., 154; 3 Wall., 688; Farmers' Bank v. Calk, MS. Op., Jan. 11, 1883.

·CHIEF JUSTICE HARGIS DELIVERED THE OPINION OF THE COURT.

This was a suit brought by the appellants upon an indivisible cause of action for the sum of $12,801.57.

The appellees admitted the receipt of that sum for the appellants as their attorneys, and in avoidance of the action, pleaded a counter-claim for their services as attorneys, amounting to $2,000 more than the sum sued for.

Issue was joined by appellants on the counter-claim, and a trial had, which resulted in a judgment in their behalf for the sum of $1,332.57.

Conceiving that the judgment in their favor was not enough, the appellants took this appeal, asking its reversal on that ground.

The appellees now move to dismiss the appeal, on the ground that appellants' right to prosecute it further has ceased.

It appears from the written pleadings of the parties, and the exhibits filed therewith, that after this appeal was taken and had been pending for some time, the appellants sued out executions upon their judgment, placed them in the hands of a proper officer, and had them levied upon the

personal property of appellees, who thereupon paid the
amount of the executions to the officer.

On the same day the executions were paid, the officer
returned them "satisfied in full,'" and paid the sum col-
lected to the appellants' attorneys.

· After the motion under consideration to dismiss the
appeal was made, the appellants, as they aver, tendered
back to the appellees the money collected from them on
the executions.

Ought the appeal, in consideration of these facts, to be
dismissed?

· The question presented for decision is a question of law,
and so far as our investigation has gone, we have found no
precedent in this state settling it one way or the other.

Hence, we are compelled to look for our guidance to the
authorities in other states and in the federal courts, so far as
they may be consonant with reason and consistent with the
statutes of this state.

This question has been considered frequently in other
states, and the conclusion reached that the enforcement of
full satisfaction of a judgment by a party in whose favor it
is rendered, will, when properly pleaded in a court of last
resort, bar an appeal by him from such judgment.

While the reasons given for the rule are not always the
same in the several decisions alluded to, yet the conclusion
is universally the same.

In the case of Fry v. Bailey, 36th Texas, page 119, the
opinion of the court was short, and in this language:

"It appears from the record that the appellant recovered
a judgment in the district court against the appellee, from
which he has attempted to appeal to this court; but disre-
garding his own attempt at appeal, he ran his execution in

the district court, and satisfied the judgment and costs. This left him nothing to appeal from, and the appeal is therefore dismissed."

Following, with the same reason, is the case of Cassell v. Fagan, 11th Missouri, page 209, where it is said:

"When a party voluntarily extinguishes his own judgment, he cannot afterwards complain of it. He is under no necessity of suing out execution to enforce his judgment, and receive satisfaction of it; and if, by his own voluntary act, he extinguishes his judgment, what is there on which a writ of error can operate?"

These and several other cases, which need not be cited, base the rule upon the ground that the judgment is extinguished by its enforcement, and consequently a waiver of the appeal and release of errors.

The case of Smith v. Jack, 2 Watts and Sergeant, page 103, it was said by the court, that "it seems inconsistent that a party should proceed on his judgment as good and valid in one court, while he is contending in another tribunal that it is erroneous, and ought to be reversed."

The supreme court of Iowa said, in the case of Miss. & M. R. R. Co. v. Byington, 14th Iowa, page 575: "We think it a correct principle of law, and well settled by the authorities, that a party cannot accept the benefit of an adjudication, and yet allege it to be erroneous."

So in Glacken v. Zeller, 52 Barb., page 152, the court gave substantially the same reason for a similar conclusion, in this language:

"It is a rule well established, and upon the wisest and soundest principles of justice, that a party who obtained the benefit of an order or judgment in a cause, and accepts the benefit, or receives the advantage, shall afterwards be

precluded from asking that the order or judgment be reviewed."

The same reason was given in the case of Knapp v. Brown, 45th N. Y. Reports, 209, in which the court thus expresses the doctrine:

"The issuing of an execution by the appellant upon the judgment rendered in his favor, and the collection of the amount thereof after bringing an appeal therefrom by him, was inconsistent with and a waiver of his right further to prosecute the appeal. By the former he enforced the judgment as a valid judgment, and secured to himself the fruits thereof as such. By the latter, he seeks wholly to reverse and annul the judgment for error therein. These acts, it is obvious, are wholly inconsistent the one with the other, and upon principle it is clear that the same party cannot pursue both."

The four cases last mentioned found the doctrine upon the idea that the acts of the plaintiff in collecting the judgment and prosecuting an appeal from it are inconsistent with each other, and that the collection is an estoppel to the appeal.

The following extracts show the conclusion of the courts, without exhibiting any particular reason therefor:

"The court being satisfied, from the evidence exhibited, that the plaintiff had received the benefit of his judgment, on this ground *alone* quashed the writ of error." (Laughlin v. Peebles, 1 Penn. Reports, 115.)

"The party who accepts of a judgment in the court below, and carries it into execution by the process of the court to satisfaction, would not receive relief from this court, if he should bring up the judgment by writ of error, and on the allegation that it was originally erroneous." (Ullery v. Clark, 18 Penn. St., p. 150.)

It was, in effect, held in a number of cases, that if the party recovering a judgment shall accept the amount thereof, he cannot afterwards appeal.   (See 44 Iowa, p. 201 ; 37 Penn. St., p. 366.)

We may, therefore, conclude with perfect confidence that the general principle is that a party who has recovered judgment on a claim which cannot be split up and made the basis of several causes of action, and afterwards coerced full satisfaction by writ of execution or authority of the court, cannot maintain an appeal from the judgment against the objections of the judgment debtor.

This doctrine is supported by the authorities cited, and a long list of cases from which we deem it unnecessary to make quotations.   (See 36 Iowa, 250; 11 Abb. Pr., 79; 3 La. Ann., 115 ; *Ib.*, 358 ; *Ib.*, 593 ; 7 *Ib.*, 233 ; 2 Gillon (Ill.), 700 ; 30 How. Pr., 397 ; 34 *Ib.*, 449 ; 13 New York Superior Court, 29; 18 N. Y., 481 ; 54 Ala., 334 ; 45 Ala., 123.)

Counsel for appellants have cited a number of authorities which, it is contended, establish a different rule; but after a patient and thorough examination of each case, we are unable to find that any of them go further than to hold that neither a *voluntary* payment by the defendant of the judgment, nor a *partial* satisfaction thereof under coercion, will constitute a waiver of the appeal or a release of errors.  But the weight of authority is to the effect that an acceptance of full satisfaction of the judgment annihilates the right to further prosecute the appeal; while there are cases holding the contrary view.

In the case of Benkard v. Babcock, 27 Howard's Practice, 393, the motion to dismiss the appeal was denied, because the defendants had voluntarily paid the judgment, yet in

that case the general rule which we have stated was admitted to have numerous authorities in its support, and its soundness was not disputed.

And the case of Clowes v. Dickinson, 8 Cow., 330, was determined upon the fact of a voluntary acceptance, hence it is not authority upon the point at issue in this case.

Nor does the case of Dyett v. Pendleton, 8 Cowan, 325, support the appellants' theory, as, in that case, the defendant, against whom the judgment was rendered, took the appeal, and we find no case where it is held that the defendant who is not able, or does not desire to supersede the judgment, may not pay it off and still prosecute the appeal.

Section 747 of our Civil Code, which declares that "an appeal shall not stay proceedings on the judgment, unless a supersedeas be issued," contemplates the collection of the judgment pending the appeal, when taken by the defendant, unless he shall supersede it, which he is not bound to do in order to maintain his appeal. This is the law of Missouri. (Cassell v. Fagin, 11 Mo., 208.) Much stress has been laid upon the case of the United States v. Dashiel, reported in 3d Wallace, p. 702.

In that case it appears that only a partial satisfaction of the judgment had been coerced, and for that reason the motion to dismiss was overruled, the majority of the court saying, on the direct point in issue, that "neither the decisions of the courts, therefore, nor the text-writers, afford any countenance to the theory that *partial* satisfaction of the execution operates as the extinguishment of the judgment or a release of errors, or that it takes away or impairs the jurisdiction of this court. Carefully examined, it will be found that the cases cited assert no such doctrine, but that

every one of them proceeds upon the ground that, where the plaintiff has sued out execution, enforced his judgment, and obtained full satisfaction, there is nothing left on which a writ of error can operate."

"Import of the argument is, that a writ of error lies only on final judgments, and that the plaintiff, when he accepts full satisfaction for his judgment, removes the only foundation on which the writ of error can be allowed."

Three of the justices, Nelson, Swayne, and Grier, dissented from the doctrine laid down by the majority, and maintained their views with much strength and reason. A single quotation from their views sets in a strong light the seriousness of the objection to the opinion from which they dissented. It is in this language:

"The plaintiff having elected to take execution and satisfy his judgment, has no longer any judgment upon which the writ can operate. His election to accept and execute his judgment is a retraxit of his writ of error. Such has been the unanimous decision of every court of law that has passed on the question. . . . . . . . . A judgment is one thing. The plaintiff cannot divide his claim into parts, and when he obtains judgment for part accept that part, and prosecute his suit for more. Having the right to elect to pursue his judgment or his writ of error, he cannot elect to have both."

These opposing views show the difficulties which beset the doctrine that partial satisfaction coerced from the defendant does not operate as an election to pursue the judgment and a ratification thereof. Much might be said in favor of the position of the dissentient judges taken in that case; but as we are determining the question upon the fact of *full* satisfaction, and not *partial* satisfaction, we refrain from

applying the test of reason to the doctrine of that case, in: the light of the admission by the majority that the authorities hold that full satisfaction is sufficient to destroy the right to appeal or to prosecute it.

It is contended that the doctrine of the authorities which we have considered applies to common law judgments, if to any, and not to judgments rendered in chancery. In this we cannot concur.

The authorities in this country make no distinction between common law and equity cause in the application of the rule where the fact and its result is the same, while there is greater room in equity causes than in a common law case for exceptions to the rule based on the divisibility of their judgments: as in such cases the decree may have various parts, "some of which may be good and executed, while others may be litigated on appeal."

But even at law, where the judgment is rendered for an uncontested part of an otherwise indivisible cause of action, there could be no sound objection to an appeal from the contested part, and a collection of the judgment for the uncontested part pending the appeal.

Each case, however, whether at law or in equity, will have to be determined upon its particular facts in the light and pursuant to the logic of the general rule laid down above as governing this case.

An examination of the decisions of this question arising in chancery causes will show that the rule and its application is not varied by the fact that the case happens to be in equity.

The supreme court of Illinois said, in Ruckman v. Alwood, 44th Ill., 185:

Paine, &c., v. Woolley, &c.

"This was a bill in chancery, filed in the courts by defendants in error against plaintiffs in error, to redeem the land described in the bill from a conveyance claimed to have been a mortgage. On the hearing below, the deed was declared to be a mortgage, and the sum loaned, with interest, was decreed to be paid, and a conveyance to defendants in error. . . . . It is the settled doctrine of this court, that where a party, recovering a judgment or decree, accepts the benefits thereof voluntarily, and knowing the facts, he is estopped afterwards to reverse the judgment or decree in error; that the acceptance operates and may be pleaded as a release of errors."

The case of Bennett v. Vansyckle, 18th N. Y., page 484, was an equity action, and on a motion to dismiss the Court of Appeals said:

"The right to proceed on the judgment and enjoy its fruits, and the right of appeal, were not concurrent. On the contrary, were totally inconsistent. An election to take one of these courses was therefore a renunciation of the other."

In the case of Holt v. Rees, 46th Illinois, page 181, the court uses this language:

"If a decree is to be reversed, the parties should be placed in *statu quo*. It would be manifestly unjust to permit Clapp to take all the money the decree gives him, and then speculate upon the possibility of getting more by means of a writ of error. . . . . . . We are clearly of opinion that a party cannot accept money directed to be paid him by a decree, and then ask a reversal on the ground that it did not give him enough. His acceptance was a ratification."

We will content ourselves by again referring to the reasoning which is quoted above from Knapp v. Brown, 45th N. Y., p. 209.

That reasoning is fully sustained by the cases of Vail v. Remsen, 7th Paige, page 206; Morgan v. Todd, 2 Gilman, (Ill.), page 414; 18th La., page 62.

And this court, in speaking of the right of a party, who has enjoyed the benefit of a decree, to reverse it, said, in the case of Bourne v. Simpson, 9th B. Mon., page 455, that "having used all the privileges conferred on her by the decree, she is too late in complaining of its burdens, if any such exist."

It seems that this equitable doctrine, by analogy, applies to the question under consideration.

Whether the collection of the judgment amounts to an extinguishment of it, so that no appeal will lie, it is universally agreed by all the authorities that it is a waiver of the right to take the appeal, or to prosecute it after it may be taken.

The appellants having elected to collect their judgment, they thereby ratified it, and should be estopped from prosecuting this appeal any further as being inconsistent with their conduct in collecting the judgment as a valid judgment, which they now seek to have reversed as an illegal judgment.

Such inconsistency and self-stultification is abhorrent to the law. It exhibits a disregard for the rights of the defendants. For the judgment must be either legal or erroneous.

If legal, no appeal should have been prosecuted from it; if illegal, its collection ought not to have been enforced, but an appeal prosecuted to correct it. So the appellants

are in this dilemma.: they have wronged the appellees either by coercing full satisfaction of an unlawful judgment, or by appealing from a valid judgment. Therefore, if the collection of the judgment be right, the appeal must be wrong, and if the appeal is well taken, the judgment ought not to have been collected. But to escape this position appellant's counsel argued that it would be a hardship to disallow the collection of the judgment pending the appeal from it, because the defendants might become insolvent. So they might; but the appellants might also become insolvent after the satisfaction of the judgment, and before the determination of the appeal, which might be so disposed of as to result in a new trial that would terminate in finding that the appellants were entitled to nothing.

There is no more reason for allowing a judgment to be collected pending an appeal from it, for fear of the insolvency of the defendant, than to compel him, for the same reason, to pay the plaintiff's demand before judgment.

The provisional remedies provided by our Kentucky statutes furnish ample protection against loss pending the original action or an appeal by allowing, on a proper state of facts, coercive collection of money or preservation of property for the satisfaction of any judgment that may be obtained. To those laws, and the incidental powers of the chancellor in proper cases, the plaintiff must look for authority to control the money or property of his antagonist pending the litigation.

It would be unwise to make the poverty of a party a ground for such a proceeding as this. Even the attachment laws, based upon insolvency, where the attached debtor is secured from loss by the bond and security of his creditor, have been justly criticised as harsh and oppressive. Much

more oppressive would be a rule that would allow a party to collect a judgment and afterwards reverse it, without any security to his antagonist, while these double and inconsistent remedies are played upon him by the speculative spirit which prompts their employment.

Section 747 of the Civil Code, above quoted, means that a party cannot stay proceedings upon a judgment against him by taking an appeal merely. In order to stay the proceedings he is bound to supersede the judgment. This clearly contemplates the collection of the judgment pending an appeal from it by the party against whom it may be rendered, unless he avail himself of a supersedeas, by which alone he can stay its collection. This is the effect of the decision in Kellar v. Williams, 10 Bush, 221.

It would be an anomalous idea to require a party to supersede a judgment in his own favor from which he has taken an appeal. And to require a party against whom a judgment may be rendered, and of which he is not complaining, to supersede it while his adversary speculates upon the chances of obtaining a greater judgment against him, would be legal anarchy. And the rule contended for by appellants is hardly less inconsistent with the orderly methods of courts of justice and the unequivocal good faith which should be exercised by all parties in invoking their aid in the legal assertion of rights.

The tender, even if undisputed, would not restore to the appellants, against the consent of the appellees, their right to still prosecute this appeal, which they waived by enforcing the full satisfaction of their judgment.

The waiver became a fixed right upon which the appellees might rely pending the appeal in this court, so soon as an involuntary satisfaction of the judgment was coerced from

them, and the tender of the appellants, after securing the fruits of their judgment, which they would doubtless have willingly enjoyed but for appellee's motion, which reduces their election to a certainty, cannot alter the right of the appellees to insist upon the waiver of the appellants further to prosecute this appeal.

If a tender were allowed to reinstate the right to continue the prosecution of the appeal, the party against whom the judgment may be rendered will only have a shadow of right under the general rule we have been considering, while the substance is denied him. The appellant may harass him with an appeal and a collection of the judgment appealed from at the same time, and when the appellee complains that these inconsistent remedies are being pursued against him, and that his property has been seized, and payment of the judgment coerced from him, the appellant, having speculated on his submission, may turn round and tender back the money, and defeat the motion of the appellee, which ought to have been sustained when made. Such results furnish strong reasons for denying the practice contended for by the appellants.

The cases cited in 9 Ala., 278; 10 Ala., 274; 17 Ala., 458; 23 Ala., 347; 45 Ala., 126; and 54 Ala., 354, do not support the doctrine that a tender restores the right to further prosecute the appeal.

The courts of Alabama have gone further, perhaps, the other way than those of any other state.

There, even after a reversal of the judgment, the court would not allow the mandate to issue unless the defendant were placed in *statu quo*, and his property or money returned to him.

We do not think, therefore, that the tender altered the rights of these parties as they existed at the inception of this motion.

Wherefore, the motion to dismiss the appeal is sustained, and the appeal is dismissed.

Judge LEWIS dissenting.